**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT GREENEVILLE**

DAVID HEARING,               )
)
       Petitioner,     )
)
v.                         )      No.  2:18-CV-00094-RLJ-CRW
)
GRADY PERRY[1],       )
)
       Respondent.   )

## MEMORANDUM OPINION

Petitioner David Hearing has pro se filed a petition for a writ of habeas corpus under U.S.C. § 2254, challenging the constitutionality of his confinement under convictions for two counts of first-degree felony murder [Doc. 1; Doc. 25].  After reviewing the parties' filings and the relevant state court record, the Court has determined that Petitioner is not entitled to relief under § 2254, and no evidentiary hearing is warranted.  *See* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  For the reasons set forth below, the § 2254 petition will be **DENIED**, and this matter will be **DISMISSED**.

Additionally, as the Court now denies Petitioner's § 2254 petition, his motion for summary judgment [Doc. 52] is **DENIED AS MOOT**.  Likewise, Petitioner's motion for discovery [Doc. 59] and motion to set a date for a summary judgment hearing [Doc. 60] are **DENIED AS MOOT**.  Petitioner's motions for judicial notice [Docs. 65, 66] are also **DENIED AS MOOT**.

---

[1]  Although Petitioner names Cherry Lindamood as the Respondent, Grady Perry is the current warden of South Central Correctional Center, where Petitioner is confined, and is thus the proper Respondent.

## I. BACKGROUND

Petitioner was one of several defendants accused of murdering a Tennessee couple, Ance "Pete" Pratt and his wife, Rebecca Pratt, during an aggravated burglary at the couple's home in Hancock County, Tennessee. *David Hearing v. State*, No. E2009-02430-CCA-R3-PC, 2010 Tenn. Crim. App. LEXIS 829, at *2 (Tenn. Crim. App. Oct. 4, 2010) ("*Hearing III*"). Petitioner pleaded guilty to two counts of first-degree felony murder and received two concurrent life sentences, while his other charges were dismissed. *Id.* at *2. Less than a month later, Petitioner filed a motion to withdraw his guilty pleas, the first of many avenues through which he would attempt to challenge these pleas, alleging that his appointed counsel was ineffective which rendered his guilty pleas not knowingly, voluntarily, and understandingly entered. *Id.* The trial court ordered this motion to be treated as a petition for post-conviction relief, which it denied after an evidentiary hearing, finding that Petitioner's pleas were knowing and voluntary and that Petitioner did not receive ineffective assistance of counsel. *Id.* Petitioner appealed to the Tennessee Court of Criminal Appeals ("TCCA") which remanded the case to the trial court with instructions that the motion be considered as a motion to withdraw Petitioner's guilty pleas. *David Wayne Hearing v. State*, No. E2006-00362-CCA-R3-PC, 2006 Tenn. Crim. App. LEXIS 997, slip op. at 2 (Tenn. Crim. App., Dec. 28, 2006) ("*Hearing I*"). On remand, the trial court denied Petitioner's motion to withdraw his guilty plea, which the TCCA affirmed. *David Wayne Hearing v. State*, No. E2007-00778-CCA-R3-PC, 2008 Tenn. Crim. App. LEXIS 105, slip op. at 2 (Tenn. Crim. App., Feb. 22, 2008) ("*Hearing II*") (perm. app. denied). The TCCA found that although Petitioner alleged many deficiencies on behalf of counsel, he failed to demonstrate any prejudice resulting from the suggested deficiencies. *Id.* at 7-9. Moreover, the court found that the transcript of Petitioner's guilty plea hearing reflected that his pleas were knowingly and voluntarily entered. *Id.* at 9.

Petitioner then filed a petition for post-conviction relief, alleging that counsel on his motion to withdraw was deficient for: (1) allowing the court to treat his motion as a post-conviction action; (2) failing to provide sufficient evidence to support Petitioner's claims; (3) failing to argue that his judgments "were both void and voidable;" and (4) failing to argue a conflict of interest between Petitioner and plea counsel.[2] *Hearing III*, 2010 Tenn. Crim. App. LEXIS 829, at *1. The post-conviction court denied Petitioner relief and the TCCA affirmed, finding that Petitioner had not demonstrated prejudice when counsel conducted a thorough evidentiary hearing on Petitioner's motion, which was in fact considered, that counsel was not deficient for failing to offer the plea agreement into evidence because the record belied Petitioner's claims of ambiguity and misunderstanding, and that counsel was neither deficient nor was Petitioner prejudiced where counsel developed Petitioner's claims to the best of his ability. *Id.* The TCCA declined to further address Petitioner's claim that his pleas were not knowingly and voluntarily entered as it had been previously determined. *Id.*

Over the next decade, Petitioner filed a plethora of state court challenges, none of which were successful. He filed for a writ of habeas corpus alleging that the judgments against him were void due to internal inconsistencies. *Hearing v. Mills*, No. W2011-01226-CCA-R3-PC, 2012 Tenn. Crim. App. LEXIS 135 (Tenn. Crim. App. Feb. 28, 2012) (finding that although the judgments against Petitioner stated that Petitioner would receive a fifty-one year sentence, the judgments were not void where they also correctly stated Petitioner was sentenced to life). Petitioner then filed for a writ of error coram nobis alleging that he had an avenue to provide new evidence via a Rule 12 report. *Hearing v. State*, No. E2013-00640-CCA-R3-ECN, 2014 WL 2547780 (Tenn. Crim. App. June 3, 2014), *perm. app. denied* (Tenn. Dec. 19, 2014) (denying the

---

[2] Claim (4) was added in an amended petition after the appointment of counsel.

3

petition finding that the report had been available since 2005 and that the information Petitioner wanted to introduce was the result of a mistake and was not then new evidence). Next, Petitioner filed two motions to correct illegal sentencing because Petitioner's plea agreements state "life with the possibility of parole," while Petitioner was not parole-eligible because he was convicted of first-degree murder. *State v. Hearing*, No. E2014-01908-CCA-R3-CD, 2015 WL 2128600 (Tenn. Crim. App. May 6, 2015), *perm. app. denied* (Tenn. Oct. 16, 2015) (finding that although the negotiated plea agreement stated that Petitioner was sentenced to life with the possibility of parole, which was inaccurate terminology, this language did not render the judgments against him void); *State v. Hearing*, No. E2015-00173-CCA-R3-CD, 2015 WL 4710393 (Tenn. Crim. App. Aug. 7, 2015), *perm. app. denied* (Tenn. Dec. 10, 2015) (dismissing Petitioner's motion as the issue was previously raised and addressed in his prior motion). Petitioner then filed a motion to correct a clerical mistake. *State v. Hearing*, No. E2016-00566-CCA-R3-CD, 2017 WL 2791182 (Tenn. Crim. App. June 27, 2017), *perm. app. denied* (Tenn. Nov. 16, 2017) (finding no merit to the argument that Petitioner was sentenced to life while bargaining for life with the possibility of parole). Petitioner then filed another application for writ of error coram nobis arguing that the trial court's ruling that the sentencing judge misspoke when referring to Petitioner's life sentence as one with parole was new evidence and seeking to have the trial judge from his first error coram nobis proceeding recused. *Hearing v. State*, No. E2016-01297-CCA-R3-ECN, 2017 WL 2829754 (Tenn. Crim. App. June 30, 2017), *perm. app. denied* (Tenn. Nov. 16, 2017) (finding that a trial court's prior findings do not provide a basis for recusal, that coram nobis relief is not available for convictions arising from guilty pleas, and that the trial judge was not a witness to the error coram nobis allegations by nature of his previous ruling). Petitioner then filed a second application for writ of habeas corpus, which the habeas court and the TCCA agreed contained only issues that had

4

been raised and addressed in other petitions. *Hearing v. Lindamood*, No. M2016-02114-CCA-R3-HC, 2017 WL 2438581 (Tenn. Crim. App. June 6, 2017), *perm. app. denied* (Tenn. Oct. 4, 2017).

Finally, Petitioner filed the instant petition [Doc. 1]. After Respondent filed his answer [Doc. 18], Petitioner filed a motion to expand the record [Doc. 20] and motion for an evidentiary hearing [Doc. 24], each of which were denied. Petitioner then filed a motion to amend his petition [Doc. 25], which the Court granted ordering Respondent to file an answer within sixty days [Doc. 27]. Before Respondent's answer, Petitioner filed a Motion for Summary Judgment [Doc. 29], and Respondent filed a motion for extension of time in which to file his answer [Doc. 33]. Despite Petitioner's opposing motion, the Court granted Respondent an extension, which Petitioner then contested [Docs. 35, 36, 38]. Petitioner filed many other motions [a motion for clarification regarding docketing [Doc. 40]; two motions for a show cause order regarding prosecutorial misconduct [Docs. 41, 45]; an ex parte application to conduct limited discovery and a request for in-camera proceedings [Docs. 42, 43]; a motion for a *Martinez* hearing [Doc. 47]; and a motion for appointment of counsel [Doc. 48]], which the Court denied on September 28, 2020 [Doc. 51]. On the same date, the Court likewise denied Petitioner's motion for summary judgment, finding that Petitioner and Respondent substantially disagree about genuine issues of material fact and that Petitioner was not then entitled to habeas corpus relief as a matter of law [*Id.*]. Just over two weeks later, on October 15, 2020, Petitioner filed another motion for summary judgment with nearly identical subject matter to his first motion [Doc. 52], which is also pending before the Court. Accompanying this motion, Petitioner has also filed motions for discovery [Doc. 59] and to set a date for a summary judgment hearing [Doc. 60]. Petitioner likewise filed motions for the Court to

Case 2:18-cv-00094-RLJ-CRW   Document 67   Filed 10/06/21   Page 5 of 24   PageID #: 4826

take judicial notice of a recently decided Sixth Circuit case which he claims pertains to the instant petition [Docs. 65, 66].[3]

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in 28 U.S.C. § 2254, prohibits the grant of habeas corpus relief for any claim that a state court adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2). This standard is intentionally difficult to meet. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted). A district court may only grant habeas relief under the "contrary to" clause where the state court decides a question of law or materially indistinguishable set of facts conversely to the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "A run-of-the-mill state-court decision applying the correct legal rule . . . to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id.* at 406. The Court may only grant relief under the unreasonable application clause when the state court applied the correct legal principle in an "objectively unreasonable" manner, not when the state court's decision was simply erroneous or incorrect. *Id.* at 409 – 11; *Schriro*, 550 U.S. at 473. Under this clause, a petitioner must demonstrate "that the state court's ruling on the claim…

---

[3] Judicial notice is governed by Federal Rule of Evidence 201, which provides that courts may "judicially notice a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b). Petitioner's motion misunderstands the purpose of judicial notice and rather seeks to support or supplement Petitioner's petition with a recently decided case, which is not a proper "fact" to be judicially noticed.

6

was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods*, 135 S. Ct. at 1376.

The AEDPA likewise requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Where the record supports the state court's findings of fact, those findings are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Even if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (internal quotations omitted). A factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Id.*[4]

In addition to the stringent standard for succeeding on the merits of a claim, the grant of habeas relief is further restrained by exhaustion requirements and the doctrine of procedural default. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In order for a claim to be considered on habeas review, the petitioner must first exhaust state remedies for that claim. 28 U.S.C. § 2254(b)(1). Exhaustion requires a petitioner to "fairly present," each federal claim to all levels of the state appellate system, meaning he presented the "same claim under the same theory" up to the state's highest court, *Wagner v. Smith*, 581 F.3d 410, 414, 418 (6th Cir. 2009), to ensure that states have a "full and fair opportunity to rule on the petitioner's claims," *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *see O'Sullivan*, 526 U.S. at 842. Tennessee has determined that presentation to the TCCA will satisfy the requirement of presentation to the state's highest court. Tenn. S. Ct. R. 39. If a claim has never been presented to the highest available state court and is now barred from such presentation by a state procedural

---

[4] Importantly, the Court evaluates the record only as it existed at the time the state court adjudicated Petitioner's claims on their merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

7

rule, that claim is procedurally defaulted and barred from federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

## III. ANALYSIS

Petitioner raises four claims in his amended petition: (1) his guilty pleas were "unknowingly, involuntarily, and unintelligently entered;" (2) he received ineffective assistance of counsel; (3) the prosecution breached the negotiated plea agreement; and (4) the prosecution committed prosecutorial misconduct by violating *Brady v. Maryland*, 373 U.S. 83 (1963) [Doc. 25-1]. Respondent contends that Petitioner's claim regarding his guilty plea is meritless and that his remaining claims are procedurally defaulted and not entitled to review [Doc. 37]. The Court agrees that Petitioner is not entitled to relief on any of his claims.

### A. Guilty Plea

Petitioner first challenges the validity of his guilty pleas. While Petitioner characterizes this claim as one that he "was provided ineffective assistance of counsel when his guilty plea was unknowingly, involuntarily, and unintelligently entered, based upon misadvice [sic] and a misunderstanding as to its consequences, including the actual value of the promises made to him by counsel…," nearly all of the argument he provides center around the state court's misapplication of *Boykin v. Alabama*, 395 U.S. 238 (1969) [Doc. 25-1 p. 9-104]. Respondent in turn addresses this claim as regarding the voluntary nature of Petitioner's plea and not as one of ineffective assistance of counsel, [Doc. 37 p. 13-18], which Petitioner seems to take umbrage with in his response [Doc. 39 p. 14]. Petitioner's argument appears to allege both that his guilty plea was involuntary because, inter alia, counsel was ineffective *and* that counsel was ineffective because Petitioner's guilty plea was not knowingly entered. Either claim would require the Court

to first find that Petitioner's plea was not knowingly, voluntarily, and understandingly entered and the Court will address it accordingly.

First, Petitioner argues that his plea could not be knowing and voluntary where the sentence he received was different than that promised in his negotiated plea agreement and some of those promises were, in fact, illegal and unenforceable. Specifically, Petitioner claims to have believed he was negotiating for a fifty-one year sentence, which was only being "called" a life sentence, to be served at thirty percent as a Class A standard offender, and that he would be given credit for all time served. Petitioner alleges that not only did he subjectively misunderstand his sentence, but that portions of the plea agreement were unenforceable under Tennessee law as Petitioner was neither eligible for parole nor eligible to be credited for the time he served during which he fought extradition. Next, Petitioner alleges that his plea was undermined by the ineffective assistance of his trial counsel, who advised Petitioner to accept this plea agreement which included illegal and unavailable provisions. Further, Petitioner claims that his plea colloquy was constitutionally deficient, as the trial court did not go over the negotiated plea agreement "promise by promise," and thus could not cure the defects in his plea.[5] Lastly, he takes issue with the state court's finding on appeal that Petitioner received the sentence he bargained for, which credited the testimony of counsel, rather than Petitioner.

To be valid, a guilty plea must be entered into knowingly, intelligently, and voluntarily. *Brady v. United States*, 397 U.S. 742, 748 (1970). To determine if a plea was voluntary, the Court

---

[5] Petitioner claims that the presiding judge likewise mischaracterized the sentence as a determinant sentence of life with the possibility of parole and explained to Petitioner that his sentence was a determinant sentence of fifty-one years. He also states that the judge did not explain that Petitioner was not accepting the plain language of the specific terms of the plea agreement or that the terms of the agreement were unenforceable.

looks to the totality of the circumstances, *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady*, 397 U.S. at 747), to establish "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Boykin*, 395 U.S. at 242. The totality of the circumstances must show that the plea was not coerced and that Petitioner was informed of the relevant circumstances surrounding his plea and all the direct consequences of his plea. *Brady*, 397 U.S. at 755; *Stumpf v. Mitchell*, 367 F.3d 594, 609 (6th Cir. 2004).[6] Considerations include the intelligence of the defendant, his familiarity with criminal proceedings, the effectiveness of his counsel, and the reason he decided to plead guilty. *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984).

When a petitioner challenges his guilty plea in federal habeas proceedings, the respondent bears the burden of demonstrating that the plea was voluntary and intelligent, which is typically accomplished by producing a transcript of the plea proceedings. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). State court findings that a plea was proper are presumed correct, unless the transcript is inadequate to support that the plea was voluntary and intelligent. *Id.* at 326-27. To withstand post-conviction challenge the record must "leave[] [no] doubt as to whether the plea was in fact intelligent and voluntary." *Stumpf*, 367 F.3d at 600; *Boykin*, 395 U.S. at 242. A petitioner's representation of voluntariness at his guilty-plea hearing carries a strong presumption of veracity and constitutes "a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Accordingly, not every ambiguity in a plea proceeding, without more, will render a plea not "knowing and intelligent." *Stumpf*, 367 F.3d at 609.

---

[6] Eligibility for parole is not a direct consequence of which a defendant must be informed. *McAdoo v. Elo*, 365 F.3d 487, 495 (6th Cir. 2004).

Petitioner exhausted this claim to the TCCA when he appealed the denial of his motion to withdraw his guilty pleas. *See Hearing*, 2008 WL 481781, at *8-9. There, the TCCA correctly applied *Boykin* and affirmed the trial court's decision that Petitioner's plea was not coerced and that Petitioner was not misinformed about the length of his sentence. *Id.* at *7-9. The TCCA noted that Petitioner's own statements during his plea colloquy belied his later claims. *Id.* The transcript demonstrated that Petitioner stated he had a twelfth grade education and could read and write; was of sound physical and mental condition; understood what he was pleading to and the accompanying waiver of rights; that he was pleading guilty because he was guilty; and that no promises or threats were used to induce his plea. *Id.* Petitioner also agreed that the "complete agreement" he reached with the State was that he would be sentenced to "a determinant sentence of life with the possibility of parole in each count, those two counts to be served concurrently for a life sentence in each of the . . . counts[.] *Id.* Moreover, while the TCCA believed that many of Petitioner's claims stemmed from his dissatisfaction with counsel, Petitioner had told the trial court that he had no complaint with the representation he had received. *Id.* The TCCA found that ultimately, the trial court resolved conflicts in testimony between Petitioner and his counsel in favor of counsel, who stated that Petitioner was not pressured into entering his pleas and was not misinformed about the length of his sentence, and that the evidence did not preponderate against this finding. *Id.*

The Court cannot find that the TCCA's holding was either contrary to or an objectively unreasonable application of *Boykin*, nor that it involved unreasonable factual findings. Respondent produced transcripts of Petitioner's plea proceedings which demonstrate that the trial court advised Petitioner that he was waiving constitutional rights by pleading guilty [Doc. 17-3 p. 41-50]. Moreover, these transcripts show that Petitioner stated that he understood the charges and

11

proceedings, had no complaints about his representation, and was not pleading guilty relative to any promises, outside of those made by the state, or threats [*Id.*]. Petitioner made no effort to inform the court, while he was under obligation to do so, that he misunderstood his sentence, was being induced or coerced to plead guilty, or that his plea was different than what he agreed to during the colloquy. He likewise agreed that he was to be sentenced to two life sentences to run concurrently [*Id.*]. A strong presumption of veracity has now attached to Petitioner's statements and the plea transcripts, which Petitioner has not overcome by his later statements that he did not understand. *See Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (holding that a petitioner's subjective understanding that his plea agreement was different than what is on the record, without more, will not suffice to undermine a plea).

Although Petitioner later testified that he received a different sentence than what he bargained for, the state court credited Petitioner's counsel's testimony that Petitioner was thoroughly informed of the correct terms of his sentence and decided to plead guilty after learning that a co-defendant was prepared to testify against him. Petitioner's attorneys testified that they discussed Petitioner's rights regarding his plea on numerous occasions, explained Petitioner's life sentence and that he "had the possibility that one day [he] could be released after the service of fifty-one years," and did not tell Petitioner that he would be eligible for parole after twelve to fifteen years [Doc. 17-2 p. 545-551; 571-574]. This Court is not well-positioned to disturb such credibility determinations absent powerful evidence that this was an erroneous determination, which Petitioner has not provided. *See Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003); *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005).

Petitioner attempts to undermine the state court's holding by pointing to notations in his plea agreement and judgment forms to indicate that he reasonably believed he was pleading only

to a fifty-one year sentence to be served at thirty percent.  Notably, Petitioner's negotiated plea agreement form indicates that he committed a "Class A felony" and was a standard offender and his judgment form lists his sentences as "51 years."  However,  each of these documents likewise state that Petitioner was receiving a life sentence and neither indicates a specific early release classification [Doc. 17-13 p. 49, 51].  Accordingly, the TCCA's finding that the additional notations were erroneous and not part of what was expressly promised to Petitioner is not objectively unreasonable, particularly where it is supported by the testimony of Petitioner's counsel.  *See Ramos*, 170 F.3d at 564 (holding that a finding that a particular plea agreement did not exist was not clearly erroneous where the state testified that it did not exist, the contested elements were not revealed in open court, and the alleged agreement would have violated state law).  Petitioner has not offered sufficient evidence to undermine the deference given to both his own assertions during the plea colloquy and that granted to state court decisions; accordingly, he has not demonstrated that his plea was unknowing, intelligent, or involuntary.

Turning to Petitioner's claim that his counsel was ineffective relative to his plea proceedings, the Sixth Circuit has clarified that even if counsel's advice leading to a guilty plea were to fall below a standard of reasonableness, a "proper colloquy can be said to have cured any misunderstanding [Petitioner] may have had about the consequences of his plea" and thus defense counsel errors concerning sentences or probation are harmless.  *Id.* at 565 (citing *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993)).  Although Petitioner claims that his plea colloquy was deficient because the court did not go over his plea agreement "promise by promise," a proper plea colloquy need only reflect that Petitioner waived his trial rights and pled guilty, and that such plea was knowing, intelligent, and voluntary.  *See Malloy v. Scutt*, 2013 U.S. Dist. LEXIS 157444, at *14 (E.D. Mich. November 4, 2013).  The Court agrees with the TCCA that Petitioner received a

13

thorough explanation of both his sentence and the consequences of his guilty plea and thus finds that Petitioner is not entitled to relief in this regard.

### B. Procedurally Defaulted Claims

Petitioner's remaining claims are (1) that he received ineffective assistance of counsel as his attorneys failed to gather certain facts or recognize the State's misconduct before advising Petitioner to plead guilty; (2) the prosecution breached the negotiated plea agreement when it "took away" certain promises at sentencing and argued against Petitioner's later attempts to assert them; and (3) the prosecution committed prosecutorial misconduct by withholding exculpatory evidence and violating *Brady v. Maryland* [Doc. 25-1]. While the parties agree that Petitioner's claim regarding his guilty plea was properly exhausted, both Petitioner and Respondent acknowledge that these remaining claims are procedurally defaulted [Docs. 25-1 p. 2; 37 p. 18-22]. Petitioner's myriad of collateral attacks has resulted in a complex and tortured procedural history, in which he has appealed to the TCCA no less than ten times. While almost all of his claims below center around Petitioner's allegation that he received a different sentence than he bargained for and his dissatisfaction with counsel, the Court agrees that Petitioner presented neither the specific claim of ineffective assistance of counsel he now presents,[7] nor his claims that the prosecution breached his plea agreement and committed misconduct, to the state court. As state remedies are now foreclosed to Petitioner, these claims are technically exhausted but procedurally defaulted. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *See* Tenn. Code Ann. § 40-30-103. Accordingly, they may not now be addressed on the merits absent Petitioner's demonstration of cause and prejudice sufficient to excuse such default. *See Engle v. Isaac*, 456 U.S. 107, 125-26 n. 28 (1982).

---

[7] Petitioner does raise claims of ineffective assistance of counsel in the courts below. However, he does not raise those claims on the same theory he now presents and as such they are not exhausted. *See Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004).

Procedurally barred claims may be considered on their "merits only if the petitioner establishes (1) cause for his failure to comply with the state procedural rule and actual prejudice from the alleged violation of federal law or (2) demonstrates that his is 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Wallace v. Sexton*, 570 Fed. Appx. 443, 452 (6th Cir. 2014) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *See House v. Bell*, 547 U.S. 518, 536 (2006). To show sufficient "cause," Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray*, 477 U.S. at 488. To demonstrate prejudice, Petitioner must show that the inadequacies worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). The prejudice requirement is not met where there is strong evidence of a petitioner's guilt and lack of evidence for his claim. *Id.* at 172.[8] Each of Petitioner's claims and his suggested "cause" and "prejudice" will be discussed in turn.

### i. Ineffective Assistance of Counsel

Petitioner makes a lengthy and weighty charge of ineffective assistance against his trial counsel. He alleges that his attorneys (1) failed to recognize the prosecution's misconduct, where he alleges that the State supported the arrest warrant with a false and misleading affidavit and breached Petitioner's plea agreement as discussed above; (2) failed to attempt to resolve the prosecution's non-compliance with "early discovery" as ordered by the court and did not then discover evidence that would have led Petitioner to go to trial; and (3) advised Petitioner to enter

---

[8] Where petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

15

a guilty plea based on unfulfillable promises[9] [Doc. 25-1 p. 109-221]. Moreover, he claims that his attorneys put forth little effort during negotiating the plea agreement, failed to assess likely trial outcomes, and failed to uncover or refute various pieces of evidence gathered by the State [*Id.*].

As cause to excuse the default of this claim, Petitioner pleads both that he is actually innocent and that his post-conviction counsel was ineffective. Respondent, however, alleges that actual innocence will not provide a gateway to Petitioner's claims and that Petitioner may not use the ineffective assistance of counsel as cause because his claims are not substantial.

First, Petitioner claims that his ineffective assistance of counsel claims may be reviewed under the actual innocence gateway set out in *Schlup v. Delo*, 513 U.S. 298 (1995) and *House v. Bell*, 547 U.S. 518 (2006).[10] In order to warrant review under the "actual innocence" prong, which is reserved for fundamental miscarriages of justice, a habeas petitioner must demonstrate that a constitutional error resulted in the conviction of one who is "actually innocent." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). A habeas petitioner asserting a claim of actual innocence must establish that in light of new, reliable evidence – either trustworthy eyewitness accounts, critical physical evidence, or exculpatory scientific evidence – that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *House*, 547 U.S. at 536 (citing

---

[9] Claim (3) was discussed above in reference to Petitioner's guilty pleas.

[10] To the extent that Petitioner attempts to raise his actual innocence as a freestanding claim, the Court notes that "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Cress v. Palmer*, 484 F.3d 844, 845-55 (6th Cir. 2007) (holding that a freestanding innocence claim is not cognizable without allegations of constitutional error at trial).

16

*Schlup*, 513 U.S. at 327). The petitioner must prove "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

While it may seem counterintuitive, a petitioner who pled guilty may raise claims of actual innocence. *Id.* However, here Petitioner has not supported his claim of actual innocence with any new, reliable evidence,[11] but rather attempts to support the claim largely by presenting his perspective casting doubt on various pieces of evidence gathered by the state. These self-serving assertions cannot demonstrate that it is more likely than not that no reasonable juror would have found Petitioner guilty, particularly where Petitioner's own assertions of guilt during his plea colloquy undermine his claim that he is factually innocent. Other evidence produced by the state – most notably Petitioner's statement admitting his involvement to a Drug Enforcement Administration special agent – likewise supported that Petitioner is not factually innocent. *See* Doc. 17-3, p. 3 (letter from Petitioner's attorney outlining the evidence of Petitioner's guilt likely to be raised at trial). The bar for this exemption is high, and Petitioner has not offered sufficient new, reliable evidence to demonstrate that a fundamental miscarriage of justice will occur if his claims are not granted review.

Next the Court turns to Petitioner's argument that the ineffective assistance of his post-conviction counsel warrants relief from the doctrine of procedural default. Ordinarily, because there is "no constitutional right to an attorney in state post-conviction proceedings," the ineffective assistance of counsel in post-conviction proceedings does not qualify as "cause" to excuse procedural default of constitutional claims. *Coleman v. Thompson*, 501 U.S. 725, 755 (1991).

---

[11] Petitioner's only "new evidence" is a purported letter in which a co-defendant admits to the murders, which would not exculpate Petitioner of felony murder, and his own statement that he had a key to the victims' home, which he claims proves that he could not have committed aggravated burglary as he had their consent to enter their home.

17

However, the United States Supreme Court has carved out a narrow exception that allows a substantial claim of ineffective assistance of post-conviction counsel to constitute cause for underlying claims of ineffective assistance of counsel when the state limits presentation of those claims to post-conviction proceedings or employs a procedural framework that "makes it highly unlikely . . . that a defendant [had] a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 18 (2012)). This exception applies in Tennessee. *See Sutton v. Carpenter*, 745 F.3d 787, 795-96 (6th Cir. 2014).

For ineffective assistance of counsel to constitute cause to excuse Petitioner's procedural default of his claims, this Court must find that: (1) the claims of ineffective assistance of trial counsel were "substantial," (2) there was no counsel or counsel was ineffective during the state collateral review, (3) the state collateral review proceeding was the "initial" review proceeding, and (4) the state-law system requires or strongly encourages ineffective-assistance claims to be raised in initial-review proceedings. *Trevino*, 569 U.S. at 423 (citing *Martinez*, 566 U.S. at 13-14, 16-17).

To demonstrate that his claims are substantial, Petitioner "must demonstrate that the claim[s] ha[ve] some merit," which in this case requires analysis under the conjunctive deficiency and prejudice test set out by *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Martinez*, 566 U.S. at 14. To successfully prove that counsel was constitutionally ineffective, a defendant must establish: (1) that counsel's performance was deficient such that he was no longer "functioning as the 'counsel' guaranteed under the Sixth Amendment," and (2) that counsel's "performance prejudiced the defense . . . so as to deprive the defendant of a fair trial" and undermine the reliability of trial results. *Strickland,* 466 U.S. at 687. Counsel is deficient when his

"representation fell below an objective standard of reasonableness." *Id*. at 688. A petitioner has been prejudiced when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In the context of a guilty plea, to demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Id.*

Here, the Court need not determine whether Petitioner's counsel was deficient, because Petitioner has not demonstrated that he was prejudiced by any of counsel's alleged errors such that his trial was constitutionally inadequate. Specifically, although Petitioner has leveled a lengthy list of errors against his attorneys, he has not shown that but for counsel's alleged errors he would have chosen to go to trial. Petitioner's attorneys testified that while Petitioner originally adamantly declined to plead guilty, he changed his mind after learning one co-defendant was preparing to testify against him, and another was considering doing so [Doc. 17-2 p. 9, 46]. Counsel testified that Petitioner understood that his attorneys viewed the evidence against him as pretty strong [*Id.* at 24], and that he eventually conceded "I think I'll be found guilty" before deciding to accept a plea deal [*Id.* at 46]. Petitioner likewise understood that he could be sentenced to death, and pled

guilty in exchange for a life sentence instead [*Id*.]. This evidence indicates that Petitioner was not induced to plead guilty by counsel's deficient performance, but rather that Petitioner, "a smart man," understood that there was substantial damning evidence against him, that the chance of his being convicted was high, and that he was facing the death penalty and made a calculated decision to accept a guilty plea.

Moreover, Petitioner has not demonstrated that had counsel not "erred" as Petitioner alleges, that counsel would have changed the recommendation that Petitioner plead guilty rather than proceeding to trial. Petitioner alleges that counsel failed to recognize the State's misconduct in supporting the arrest warrant with "false affidavits" and he details vast information that Petitioner disagrees with from these affidavits, and that counsel failed to resolve the State's non-compliance with discovery.[12] However, there is no indication that even had counsel "discovered" this information, that counsel would have either agreed with Petitioner's interpretation or been induced to change their recommendations, particularly where his attorneys repeatedly indicated that they believed the evidence against Petitioner was strong and that Petitioner was likely to be convicted. As for Petitioner's generalized statement that counsel put forth little effort during negotiations, failed to assess trial outcomes, and failed to uncover various evidence gathered by the State, such conclusory allegations will not provide grounds for habeas relief. *See Cross v. Stovall*. 238 F. App'x 32, 39-40 (6th Cir. 2007). Petitioner has not presented any evidence, outside of his now self-serving words, that would allow the Court to find that there is a reasonable probability that any of these alleged errors predicated his guilty plea.

---

[12] The Court notes that the State's alleged breach of the plea agreement, which by nature had to occur *after* Petitioner's guilty plea, could not then meet the standard of prejudice indicated here.

Because Petitioner's claims are thus unsubstantial, he is not entitled to relief under the *Martinez/Trevino* framework. Moreover, as neither theory Petitioner has provided will warrant exemption from the doctrine of procedural default, he is not entitled to review on his claim of ineffective assistance of counsel.

### ii. Prosecution Breach and Misconduct

Petitioner next claims that his due process rights were violated when the prosecution breached his plea agreement and committed misconduct. Here, Petitioner claims that the prosecution verbally agreed that Petitioner would receive a "nominal" life sentence with the possibility of parole, which was actually a fifty-one year sentence, would only serve thirty percent of this sentence, and would receive credit for all time served. He alleges the prosecution breached this agreement when Petitioner attempted to have his judgments amended to reflect these promises and the State argued against such amendments. As to his claim that the State committed misconduct, Petitioner argues that the State violated *Brady v. Maryland*, when it withheld key exculpatory evidence. Neither of these claims was presented to the state court, a default which Petitioner argues may be excused under § 2254(b)(1)(B)(i). This clause provides in relevant part that failure to exhaust claims will not prevent review of claims if "there is an absence of available State corrective process." 28 U.S.C. § 2254(b)(1)(B)(i). Specifically, Petitioner claims that at the time he filed his federal petition, there were no state procedures by which he could have presented these claims to the state court because the Tennessee Supreme Court has issued an opinion "which took away all remedies for those that pled guilty to bring forth newly discovered evidence after the limitations period." The case Petitioner cites to support this theory is *Frazier v. State*, 495 S.W.3d 246, 253 (Tenn. 2016), which held "that the error coram nobis statute is not available as a procedural mechanism for collaterally attacking a guilty plea." Petitioner heavily relies on

21

language in the dissent that states that this limitation of error coram nobis relief "effectively deprives a defendant who pleaded guilty from challenging the conviction with newly discovered evidence." *Frazier*, 495 S.W.3d at 257.

Here, Petitioner is conflating the doctrines of exhaustion and procedural default. *See Broom v. Mitchell*, 441 F.3d 392, 399 (6th Cir. 2006). Section 2254 requires a petitioner to either (a) exhaust those state court remedies available to him at the time he filed his federal petition *or* (b) show that no state corrective processes were available. *Id.* Petitioner indeed exhausted the state court appeals process. This question, however, is distinct from whether Petitioner's claims are procedurally defaulted. Petitioner's claims are defaulted because he did not present them in his previous state court proceedings and there are no further remedies available to him in state court, rendering his claims technically exhausted, but procedurally defaulted. *Rust*, 17 F.3d at 160. Accordingly, Petitioner still must demonstrate cause and prejudice in order to excuse his procedural default.

Regarding his first claim, that the prosecution breached his plea agreement, the Court finds it unnecessary to determine whether Petitioner has shown "cause" as he has not demonstrated prejudice. To demonstrate prejudice in this regard, Petitioner would need to show that he has suffered actual prejudice that worked to his "actual and substantial disadvantage," and "so infected the entire trial that the resulting conviction violates due process." *See Frady*, 456 U.S. at 170. Although Petitioner argues that he was prejudiced because he did not receive the "benefit of his bargain," he has offered inadequate proof of the alleged verbal agreement that existed with the prosecution. As detailed above, these alleged terms were not indicated in open court during Petitioner's plea colloquy and Petitioner's own attorneys deny that the terms existed or that Petitioner's sentence was different than what he bargained for. Although Petitioner failed to raise

22

this specific claim that the prosecution breached his plea agreement to the state courts, he many times in many ways challenged that his sentence was other than what he bargained for. The state court repeatedly held that this was not true. Petitioner has not demonstrated prejudice sufficient to warrant relief for this claim.

The Court also does not find that Petitioner is warranted relief regarding his claim that the prosecution committed a *Brady* violation. The Sixth Circuit has clarified that "[w]hen a defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Campbell v. Marshall*, 769 F.2d 314, 318 (6th Cir. 1985). "There is no authority…holding that suppression of *Brady* material *prior to trial* amounts to a deprivation of due process." *Id.* at 322 (emphasis in original). Petitioner pled guilty in open court and thus the Court cannot address this claim.

Petitioner is not entitled to exemption from the doctrine of procedural default and his claims of prosecutorial breach of his plea agreement and misconduct will not be reviewed.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's petition for a writ of habeas corpus [Docs. 2, 34] will be **DENIED** and this action will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without

23

reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

No reasonable jurist would find that Petitioner's guilty plea was not knowingly, intelligently, and voluntarily entered or that he was entitled to relief from the procedural default of his remaining claims. Accordingly, a **COA SHALL NOT ISSUE.**

**AN APPROPRIATE ORDER WILL ENTER.**

ENTER:

_____
s/ Leon Jordan
United States District Judge

24